We'd just like to let you know that the court has received and carefully looked at the submissions that you've made to us. Thank you, Judge Parker. And we know how important this case is to you. Thank you. Thank you, Judge Parker, for reminding me. Sorry. I had a note to tell you this relates to your motion about the electronic, the docket numbers 188 and 191 with the letter you sent with exhibits. You had a motion. And I want to reassure you, as Judge Parker just noted, we looked at the record extensively and including those entries and those exhibits. Thank you very much. Thank you very much. Yeah. May I please record? My name is Karina Cruz. I'm here today because I want to ask this court to set aside the district court for the following reasons. The union told the court the reason why they did not suit my case to arbitration was because Boris had more work well than me, which is not true. Okay. The reasons are like this. The building has three measurements, from the bottom floor to the upper floor. So from 11 to 35, all the floors are the same exact measurements. And they are also the same clean-up of space. Boris' floor are C2 and 32. The 32 had, the union measured 32 with 21,890 square feet. But my two floors were not measured with the same square feet. It was way, way below that. One was measured with 16,000. I don't remember exactly. And the other one was measured with 17,000. How come the same exact floor with the same clean-up of space can measure almost 6,000 less square footage than the other one? The union did not measure my floors equally as they did with Feroza. And the proof is there. And I'm making this up. The numbers are there. The numbers don't lie. In June 2016, the union came to my floor and measured my floors for the first time. And the measurement was like, I believe, was 48,000 square feet. But the company did not agree with those measurements. And the union came back two months later and measured again. The measurement was way below. It was 31,000. How can that be? When the union came to measure my floors in July 2nd, I told the union that I wanted to use my own measuring stick to make sure that I had the right square footage. They denied me the right. They said no. So when I got the numbers, I went to the union and told them that I did not agree with those measurements that they did. And the delegate wrote that in his notes. In December 2018, the company and the union, they resectioned the building. That means the assignments that we have, they were no longer assignments. They resectioned everything. So that means, oh, and Boris' floors, C2 and 32, the measurements were very, very different than what the union is talking about now. C2 was measured with 17,000 in December 2018, prior to her, way before her arbitration. And 32 was measured, according to the union and the company, with 15,000 square feet. In February 2019, one of the delegates wrote in his notes that Boris' son called the union and told them that his mom was doing 45,000 square feet. But the union was not so sure about that. The union said, oh, that was based on their work, not on facts. The union was not sure. How come the union not know the measurements of Boris' when they already have done her measurements in 2018? And the union said they closed my case in March, which is not true. My case was closed by the union in June 2019, which is my claim 301 is still, it was on time. Timely file. In December 2003, I'm sorry, 2019, I went to Boris' arbitration. I was with her when she was getting prepared for her hearing, arbitration hearing. The union lawyer, Matt Snyder, saw her. The company was offering her $3,500 for the work that she was done. And that was based on 34,000 square feet. We told her, no, this is not true. This cannot be. She had way more work than that. Let me ask you a question, if I can, Ms. Cruz. When you submitted the documents, the letter and the exhibits that are docketed as 191, did you do that because you understood that you had to respond to the union's claim that the reason they didn't take up your case, but your coworker's case was because of the size and that you had to respond to their claims, their reasons why they claimed they didn't take up your case. Is that why you submitted those documents? That's right. You understood that the district court needed to have your response to that? Correct, yes. Did Sandra Hanau play ñ she didn't play a role in the grievance process, correct? Correct. Thank you. Those were my questions. Thank you. You may proceed. Yes. So the union, when we told them, no, this is not the measurements, it cannot be 34,000. So they came back, the union lawyer and a delegate, Johnny Herrera, they came back to the building on December 23 to re-measure her floor, C2 floor. I took down the numbers, but I did not do the math, so I don't know how the numbers came out after that. And it's just not true. What do you see how more work than me? The contract's clear. The contract says that anything over 4,000 is a violation of the contract. Regardless of if Berusa has more or less than me, I have a right to have my case, my grievance, taken to arbitration. And the union is not disputing that. The union is saying that I have also more work than Berusa. It was just an excuse to discriminate against me. The union admitted in the deposition that they, the ADN wanted to meet with the legal department. That's when the union decided not to continue with my grievance after ADN had a meeting with the legal department. I don't know what was discussed there. I never knew. But that was the reason why the union did not continue with my case, not because my case didn't have merit. Do you know whether your coworker or anybody has ever actually succeeded in an arbitration based on the amount of square footage being too much for them to clean? No. Because the union says that the contract says that, in effect, in order to see how many employees need to be sent to a particular building, no one should do more than the average should be a certain amount. It doesn't say that nobody should have to work more than that many square feet. And that their whole problem with bringing these arbitrations has been to find some case that would be a great test case. And it seems as if the contract doesn't actually say in so many words that no employee should be required to clean more than whatever it is, 4,000 square feet per hour or whatever the numbers are. It's just that the average of the building divided by how many workers shouldn't be more than that. Do you understand that argument? Yeah, I understand. Yeah. Absolutely. Do you have a response to that? I do. Yeah. The contract says that the employee cannot impose a productivity level that exceeds 4,000 square feet per hour. The work is done individually, not by group, not by team. Right. Everybody does their work individually. So the contract has a provision that the numbers of the workers should be divided between the whole square footage. Right. It's to make sure nobody do more than 4,000. The union is misinterpreting that provision. And the contract is trying to prevent employers to give us more work than 4,000 square feet. That should be the maximum. Also, the union has failed to admit that the time allowed for us to do the work is 6 hours and 45 minutes. I start at 5.30, and I have to go downstairs at 12.45. I mean, sorry, 12.30. From 5.30 to 12.30, that's seven hours. If you take out 15 minutes for break, I only have 6 hours and 45 minutes to do the work. And if you multiply that by 4,000, that's going to give me the maximum, 27,000 square feet to do per night. I'm way over that. Also, I was doing two pantries that the union recognized but did not include in the measurements, which is equal to 4,000 square feet around the two pantries, which is almost an hour. The union failed to add that to my square footage. They did not. Thank you. Thank you. Ms. Cruz, again, I want to assure you that we'll look at the entire record. You reserved one minute for rebuttal, and when the attorney for the union is done, we'll ask you to respond with anything, if you wish to respond. Thank you. Thank you so much. Attorney Strom, is it? Yes. Good afternoon, Your Honor. Andrew Strom for the Appellee Service Employees International Union, Local 32BJ. So, yeah, I mean, as the union has laid out in its brief, there's a pretty straightforward issue here that there were two different workers, Feruza Berucci and Ms. Cruz, and Ms. Berucci's workload was measured to be significantly larger, a larger square footage area, even taking into account the pantry issue, than Ms. Cruz. And Ms. Cruz was present when both measurements were taken, when the measurements were taken of her work area, when the measurements were taken of Ms. Berucci's work area. It's true that at some point after the measurements were taken, Ms. Cruz made a conclusory statement that the measurements of her work area were inaccurate, but she never explained in what way they were inaccurate and has noted she was present throughout when the measurements were taken. In terms of Ms. Berucci, I may be mispronouncing the name, did the union ultimately drop her appeal as well and not pursue it? Yes. And if so, why? I mean, I'm not sure that that impacts Ms. Cruz's case, but I'm curious. The short answer is COVID-19. What happened is that after COVID-19 happened, which sort of decimated the commercial office industry and had the effect of, among other things, the union was closed down for a couple of months, massive layoffs, et cetera, and the union was preoccupied with a huge backlog of grievances that had developed during that time because you couldn't arbitrate cases. And the union also represents workers in other industries that weren't closed down, most notably the residential sector. So we represent 25,000 residential workers in the city. So those workers were working, were having all of their grievances, but weren't being able to get them processed because, you know, we hadn't figured out Zoom yet. We hadn't figured out all those issues. So at some point the union made this decision of we have this massive backlog of grievances. We have to handle—workers have these workload cases, and traditionally the remedy in a workload case is essentially an injunctive relief, right? I mean, the standard remedy is to stop the workload, right, to reduce the workload. I mean, that's the primary remedy. I mean, the hope is to get compensation for an excessive workload, but the primary remedy is to—you know, is essentially injunctive relief. And so what the union decided is all those workload cases that dealt with workloads that no longer existed, right, because now you have people, even when they were brought back to buildings, doing different work because of vacancies, et cetera, that it just wasn't practical, you know, in terms of making—doing a triage of how do we, you know— That answers my question. Thank you. Thank you. Any other—thank you. Seeing no other questions, thank you, counsel. Ms. Cruz, you have one minute for rebuttal. And by the way, we gave you more than double your time. Thank you. You went over by about seven, eight minutes, just so you know, like we did everyone else today. Thank you. I appreciate it. Okay. The union is saying that I did not complain when they came to measure my floors. I had no way to—I was just to control, like, what they were doing. I just was writing down the numbers. That doesn't mean that I agree with the numbers. And when I asked them to let me—to allow me to use my measuring sticks was because I wanted to make sure I had the right amount of work because I knew from the beginning that we had too much work, and everybody knew that. The union knew that. And the union never wanted to take our grievances from the beginning. But when we threatened them that we were going to go to NLRB, that's when they decided to do it. Okay. I was doing a cafeteria on the 21th floor, which is a cafeteria. It's double size of the one on C1 level that two people are doing. And that's the only work they do. Two people doing—are assigned for the whole night to a cafeteria less than half of the size than the one I'm doing. Plus, I have another floor, which was a second floor. The CEO of the company was there on my floor. They had to have—that floor need a lot of details. So the union did not take that into account, knowing that. And it was not—it's clear that they retaliated against me, and also they discriminated against me because I stood up for my rights, and that's what I need to say. Thank you. Even if the whole square footage for the building had to be divided between all the workers, everybody was over, even—anyway, everybody was over. Ms. Cruz, I want to thank you. I want to thank counsel. I know you're representing yourself, but you did a fine job. Thank you so much. Thank you. Ms. Cruz, you should think about figuring out how to go to law school. I'm sorry? You should think about figuring out how to go to law school. Continue your education to ultimately become a regular before us. I would like to, to help my coworkers because it's not me. I wish you guys could see how many people are going through the same. Thank you. Thank you so much. Thank you. That concludes our case.